# Exhibit A

# Verified Complaint

Filed          17-CI-00639   06/09/2017          Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
06/16/2017 10:46:53 AM
89824-3

**COMMONWEALTH OF KENTUCKY**
**FRANKLIN CIRCUIT COURT**
**DIVISION _____**

**CIVIL ACTION NO. _____**

**RIVER CITY FRATERNAL ORDER OF POLICE**
**LODGE 614, INC.**
     6204 Price Lane Road
     Louisville KY 40229

**JOHN W. ARNOLD**
     5402 Pavilion Way
     Louisville, KY 40291

**JAMES DAVID WOOD**
     2102 Hillcircle Road
     Louisville, KY 40214

**GARY W. SIMKINS**
     12711 South Pope Lick Road
     Louisville, KY 40299

**JAMES K. LARKIN**                                                                 PLAINTIFFS
     8718 Whipps Mill Road
     Louisville, KY 40222S

v.                                        **VERIFIED COMPLAINT**

**KENTUCKY RETIREMENT SYSTEMS**
**by and through its Board of Trustees**                                 DEFENDANT
Serve:  David L. Eager, Interim Director
     Kentucky Retirement Systems
     Perimeter Park West
     1260 Louisville Road
     Louisville, KY 40601

\*     \*     \*     \*     \*     \*     \*

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000001 of 000009

Filed                17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                                                06/16/2017 10:46:53 AM
                                                                                                89824-3

The Plaintiffs, by Counsel, hereby state for their Complaint in this matter as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.      The Plaintiff, River City Fraternal Order of Police Lodge 614, Inc. ("FOP 614") is the certified collective bargaining representative of police officers employed by the Louisville/Jefferson County Metropolitan Government in the ranks of patrol officer through captain, pursuant to KRS 67C.400 et seq.  The membership of FOP 614 includes officers who have retired under the County Employees Retirement System ("CERS") administered by the Defendant Kentucky Retirement Systems.

2.      The individual Plaintiffs, John W. Arnold, James David Wood, Gary W. Simkins, Sr., and James K. Larkin, are a former police officers who until their retirements were employed by Louisville Metro or one of its predecessors, or both, in a collective bargaining unit represented by FOP 614, participating in the CERS plan, and are currently members of FOP 614. Each is currently employed by an employer that offers a group health insurance plan.

3.      The Defendant Kentucky Retirement Systems Board of Trustees ("Retirement System") is an entity capable of suing and being sued in its own name, established by legislative enactment of the Commonwealth of Kentucky, and charged with administering CERS, as well as the Kentucky Employees Retirement System and the Kentucky State Police Retirement System.

4.      This action is brought pursuant to:  the Kentucky Declaratory Judgments Act; the "inviolable contract" established by KRS 78.852 between the Commonwealth of Kentucky and the individual Plaintiffs herein; the doctrine of equitable estoppel; and Section 2 of the Kentucky Constitution.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000002 of 000009

Filed          17-CI-00639    06/09/2017          Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
06/16/2017 10:46:53 AM
89824-3

5.      FOP 614 has standing in this action by virtue of its status as collective bargaining representative of present and past officers who will or have retired under the CERS plan, as well as by virtue of its additional purpose of advocating for the benefit of retired police officers.

6.      An actual controversy exists concerning the rights of the individual Plaintiffs and the Defendant Retirement Systems by virtue of the Defendant's deprivation of rights guaranteed to the individual Plaintiffs by Kentucky Statute, including in particular the statutorily created inviolable contract with each individual to provide the benefits promised them during their employment with an agency participating in CERS.

7.      Venue and territorial jurisdiction of this action are provided to this Court in that the Defendant Retirement Systems' principle office is located in Franklin County, Kentucky.

8.      KRS 78.852, as in effect during the times when the individual Plaintiffs were employed by an agency participating in CERS, provided and continues to provide that in consideration of the contribution made by the individual Plaintiffs during their employment, and the benefits received from the member's employment, an inviolable contract of the Commonwealth exists, and that the benefits provided in the statutes concerning the CERS retirement plan shall not be subject to reduction or impairment, except in circumstances not present in this matter.

9.      Among the benefits provided to the individual Plaintiffs by virtue of KRS 78.510 to 78.852 is the provision of group hospital and medical insurance coverage as provided for in Kentucky statutes including KRS 61.702 as made applicable to CERS by its own terms as well as by KRS 78.545(35).

10.     The  above-described hospital/medical insurance coverage provided to the individual Plaintiffs in connection with their retirement under the CERS plan is a benefit

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

COM : 000003 of 000009

Filed          17-CI-00639          06/09/2017          Amy Feldman, Franklin Circuit Clerk          NOT ORIGINAL DOCUMENT
                                                                                                06/16/2017 10:46:53 AM
                                                                                                89824-3

provided pursuant to KRS 78.50 to 78.852, and is therefore an element of the inviolable contract

set out in KRS 78.852, and is consequently not subject to reduction or impairment by alteration,

amendment, or repeal.

      11.     By substantially identical letters sent in or around March 2017 to members of

FOP 614 (and upon information and belief to others similarly situated) who (a) were or were

about to become eligible for Medicare and (b) had retired under CERS and subsequently re-

entered employment through which health insurance is available, the Retirement System stated

to each letter recipient that the Medicare Secondary Act prohibited the Retirement Systems from

offering them healthcare coverage secondary to Medicare, and that consequently his or her

coverage through the Retirement Systems, as well as dependents covered on his or her policy,

will terminate effective June 30, 2017.  A copy of one such letter is attached hereto as Exhibit A.

      12.     Each of the individual Plaintiffs herein received one of the above-described letters

from the Retirement System.

      13.     The claim that the Medicare Secondary Act requires termination of healthcare

coverage to the individual Plaintiffs is false, and is not supported by the language of that Act.

      14.     Some of the individual Plaintiffs, and some of the other non-party members of

FOP 614 who received the Retirement System's letters as described above had received similar

letters in 2016 after which the Retirement System had terminated their health insurance coverage

but then later reinstated their coverage without explanation, but only after the individuals had

incurred thousands of dollars in insurance premiums they should not have had to pay.

      15.     Termination of the hospital/medical insurance coverage selected by the individual

Plaintiffs in connection with their retirement under the CERS plan will subject each of the

individual Plaintiffs to irreparable harm, by causing them to incur greater health insurance

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

COM : 000004 of 000009

Filed          17-CI-00639       06/09/2017        Amy Feldman, Franklin Circuit Clerk     NOT ORIGINAL DOCUMENT
06/16/2017 10:46:53 AM
89824-3

expenses, causing them the difficulty of finding alternative coverage, exposing them to the
entirely possible occurrence of delay in obtaining alternate health coverage, and subjecting them
to the possibility that they will not be able to secure comparable coverage and therefore have to
forego medication or medical care they need.

16.     FOP 614, through Counsel, by letter of March 30, 2017, and by a second letter of
May 17, 2017, the second enclosing an early draft of this Complaint, advised the Retirement
System of the unlawful nature of the intent to terminate health insurance coverage stated in the
above-described letter, requested the Retirement System to retract that letter, and stated
unequivocally that suit would be filed in the absence of such retraction.  The Retirement System
did not reply to either letter.

17.     The Retirement Systems' unilateral action in terminating the hospital/medical
insurance coverage selected by the individual Plaintiffs in connection with their retirement under
the CERS plan of Kentucky Statute, constitutes arbitrary action in violation of Section 2 of the
Kentucky Constitution.

COUNT I
Declaratory Judgment

18.     Plaintiffs re-allege and incorporate by reference the foregoing allegations.

19.     An actual controversy exists regarding the Defendant Retirement System's stated
intent to terminate the hospital/medical coverage selected by the individual Plaintiffs.

20.     The individual Plaintiffs and other members of FOP 614 have interests under the
above-described inviolable contract, and rights that are affected by Kentucky and federal
statutes.

21.     Plaintiffs are therefore entitled to judgment declaring and adjudicating that
termination of individual retirees' hospital/ medical coverage as the Defendant Retirement

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

COM : 000005 of 000009

Filed    00772001          17-CI-00639       06/09/2017              Amy Feldman, Franklin Circuit Clerk

Filed                    17-CI-00638        06/09/2017        Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
                                                                                      06/16/2017 10:46:53 AM
                                                                                              89824-3

System states it intends to carry out is unlawful, and to such further relief as such judgment

entitles them.

## COUNT II
### KRS 78.852

22.     Plaintiffs re-allege and incorporate by reference the foregoing allegations.

23.     The actions which the Defendant Retirement System has stated its intent to carry

out as set out above constitute a violation of the inviolable contract established pursuant to KRS

78.852.

## COUNT III
### Equitable Estoppel

24.     Plaintiffs re-allege and incorporate by reference the foregoing allegations.

25.     In making decisions regarding retirement options, including options relating to

medical/health insurance coverage, the individual Plaintiffs relied on the representations made to

them by employees of the Retirement System whose job duties and functions included advising

Retirement System members contemplating retirement.

26.     The individual Plaintiffs were induced to make their choices for healthcare

coverage upon retirement under the CERS plan by the representations of the Retirement System

employees made to them as they planned their retirements.

27.     The representations made to the individual Plaintiffs by Retirement System

employees as described above have been rendered false by the Retirement Systems' stated intent

to terminate the individual Plaintiffs' chosen healthcare coverage.

28.      The Retirement Systems is and should be estopped from terminating the

hospital/medical insurance coverage of the individual Plaintiffs, under the doctrine of equitable

estoppel.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000006 of 000009

Filed 17-CI-00639 06/09/2017 Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
06/16/2017 10:46:53 AM
89824-3

## COUNT IV
### Ky. Const. Sect. 2

29.     Plaintiffs re-allege and incorporate by reference the foregoing allegations.

30.     Termination as set out above of hospital/medical insurance coverage provided to a retiree under the CERS plan, or to the retiree's dependents, constitutes arbitrary governmental action prohibited by Section 2 of the Kentucky Constitution.

### EQUITABLE/INJUNCTIVE RELIEF

31.     Plaintiffs re-allege and incorporate by reference the foregoing allegations.

32.     The harm to the individual Plaintiffs resulting from the Retirement Systems' actions as described above is and will be irreparable, in that retirees or their beneficiaries will be deprived of health insurance coverage and may consequently be unable to afford needed medications or medical services or both.

33.     Plaintiffs are therefore entitled to restraining order, temporary injunction, and permanent injunction prohibiting the Defendant Retirement System from terminating the individual Plaintiffs' hospital/medical insurance and requiring the Defendant to reinstate retroactively the hospital/medical insurance of any individual Plaintiff whose insurance has been terminated as set out above.

WHEREFORE, Plaintiffs demand:

A.     Judgment of this Court adjudicating and declaring that termination of the hospital/medical insurance coverage provided through the Retirement System to the individual Plaintiffs and other retirees is and will be unlawful and contrary to KRS 78.852 and Section 2 of the Kentucky Constitution, and that the Defendant Retirement System is estopped from carrying

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000007 of 000009

Filed 17-CI-00639 06/09/2017 Amy Feldman, Franklin Circuit Clerk **NOT ORIGINAL DOCUMENT**
06/16/2017 10:46:53 AM
89824-3

out such action, and requiring the Defendant to make the affected parties whole for all losses

resulting from actions by the Defendant determined herein to be unlawful.

      B.      That this action be docketed for early hearing pursuant to KRS 418.050.

      C.      Issuance of this Court's emergency, temporary, and permanent injunctive relief

prohibiting the Defendant Retirement System from terminating the hospital/medical insurance

coverage of the individual Plaintiffs, and requiring the Retirement System to reinstate

retroactively any coverage so terminated and to make all affected retirees whole for expenses

incurred due to any previous cancellation of health insurance coverage contrary to the

adjudication of this Court.

      D.      Costs herein expended, including award of a reasonable attorney fee and of any

expert witness expenses.

      E.      All further relief to which the Plaintiffs may be entitled.

RESPECTFULLY SUBMITTED,

*s/David Leightty*
DAVID LEIGHTTY
PRIDDY, CUTLER, NAAKE & MEADE, PLLC
2303 River Road, Suite 300
Louisville, KY 40206
Tel.:  (502) 632-5292
Fax:  (502) 632-5293
dleightty@earthlink.net
COUNSEL FOR PLAINTIFFS

VERIFICATION

      I, David Mutchler, having been duly sworn, state that I am the elected President of the

Plaintiff River City Fraternal Order of Police Lodge 614, Inc., that I have read the allegations in

the foregoing Verified Complaint, and that the factual allegations therein are true to the best of

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000008 of 000009

Filed 17-CI-00639 06/09/2017 Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
06/16/2017 10:46:53 AM
89824-3

my knowledge and belief, including knowledge I have acquired from members of FOP Lodge

614 in the course of performing my responsibilities as President of same.

_____
David Mutchler

Subscribed and sworn to before me by David Mutchler, this _____ 9-th _____ day of June, 2017.

_____
Notary Public, State at Large, Kentucky

My commission expires: ____ 5 - 22 - 2021 ____

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

COM : 000009 of 000009

Filed        17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk        NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
Verified Complaint Exh. A

# Medicare Secondary Payer (MSP) Manual
## Chapter 2 - MSP Provisions

### Table of Contents
### *(Rev. 118, 04-28-16)*

## Transmittals for Chapter 2

10 - Medicare Secondary Payer Provisions for Working Aged Individuals

    10.1 - Individuals Subject to Limitations on Payment

    10.2 - Individuals Not Subject to the Limitation on Payment

    10.3 - The 20-or-More Employees Requirement

    10.4 - Working Aged Exception for Small Employers in Multi-Employer Group Health Plans (GHPs)

20 - Medicare Secondary Payer Provisions for End-Stage Renal Disease (ESRD) Beneficiaries

    20.1 - Determining the 30 Month Coordination Period During Which Medicare May Be Secondary Payer

        20.1.1 - Duration of Coordination Period

        20.1.2 - Determination for Subsequent Periods of ESRD Eligibility

        20.1.3 - Dual Eligibility/Entitlement Situations

    20.2 - Effect of ESRD MSP on Consolidated Omnibus Budget Reconciliation Act (COBRA)

30 - Medicare Secondary Payer Provision for Disabled Beneficiaries

    30.1 - Individuals Not Subject to MSP Provision

    30.2 - The 100 or More Employees Requirement

    30.3 - Disabled Individuals Who Return to Work

    30.4 - Dually Entitled Individuals

40 - Liability Insurance

    40.1 - Medicare's Recovery Rights

    40.2 - Billing in MSP Liability Insurance Situations

50 - Workers' Compensation (WC)

    50.1 - Effect of Payments Under Workers' Compensation Plan

60 - No-Fault Insurance

    60.1 – Medicare's Recovery Rights

70 – Interest on MSP Recovery Claims

    70.1 – MSP Debt Interest Calculation Methodology

    70.2 – MSP Debt Interest Accrual

        70.2.1 – MSP Debt Interest Accrual on Partial Payments

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000001 of 000035

Filed        17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

70.3 – MSP Debt Interest Assessment

70.3.1 - Additional Rules with Regard to the Assessment and Collection of Interest for MSP based Debts

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000002 of 000035

Filed        17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                              06/16/2017 10:53:16 AM
                                                                                              89824-3

The purpose of this chapter is to provide more detailed information concerning MSP provisions and the relationship of MSP to other laws.  Detail provided here assists contractors with responses to questions from providers, physicians, and other suppliers, attorneys, employers, and other payers.

## 10 - Medicare Secondary Payer Provisions for Working Aged Individuals
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Medicare pays secondary to GHP coverage for individuals age 65 or over if the GHP coverage is by virtue of the individual's current employment status or the current employment status of the individual's spouse.  Health insurance plans for retirees or the spouses of retirees do not meet this condition and are not primary to Medicare.  The law requires employers (as defined in the MSP Manual, Chapter 1, "Background and Overview," §20) to offer to their employees age 65 or over and to the age 65 or over spouses of employees of any age the same coverage as they offer to employees and employees' spouses under age 65.  For example, a plan may not provide benefits that are less for individuals age 65 or over or charge policyholders premiums that are higher for individuals age 65 or over since this would create an incentive for these individuals to reject the GHP coverage and make Medicare the primary payer.  This provision applies whether or not the individual age 65 or over is entitled to Medicare.  This equal benefit rule applies to coverage offered to full-time and part-time employees.

Medicare beneficiaries are free to reject employer plan coverage, in which case they retain Medicare as their primary coverage.  When Medicare is primary payer, employers cannot offer such employees or their spouse's secondary coverage of items and services covered by Medicare.  The requirements for employer compliance with the MSP provisions may differ in some respects from the requirements for compliance with the Age Discrimination in Employment Act (ADEA).  For example, the ADEA law applies only to employees, while the Medicare provision applies also to self-employed individuals.

Where a GHP is primary payer, but does not pay in full for the services, secondary Medicare benefits may be paid to supplement the amount it paid for Medicare-covered services.  If a GHP denies payment for services because they are not covered by the plan as a plan benefit bought for all covered individuals, primary Medicare benefits may be paid if the services are covered by Medicare.  Primary Medicare benefits may NOT be paid if the plan denies payment because the plan does not cover the service for primary payment when provided to Medicare beneficiaries.

A GHP's decision to pay or deny a claim because the services are or are not medically necessary is not binding on Medicare.  Contractors evaluate claims under existing guidelines derived from the law and regulations to assure that Medicare covers the services regardless of any employer plan involvement.

See definitions of employer and employee in Chapter 1.

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000003 of 000035

Filed            17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                        06/16/2017 10:53:16 AM
                                                                        89824-3

An individual attains a particular age on the day preceding his or her birthday.

## 10.1 - Individuals Subject to Limitations on Payment
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Medicare pays secondary for Part A and Part B benefits for an individual who:

- Is age 65 or over;

- Is entitled to Part A (hospital insurance) on the basis of the individual's own Social Security or Railroad Retirement earnings record, or Federal quarters of coverage, or the earnings record or the Federal quarters of coverage of another person; and

- Is covered on the basis of individual's own current employment status or the current employment status of the individual's spouse.

**Re-employed Retirees and Annuitants**

If a retiree or annuitant returns to work even for temporary periods, the employer is required to provide the same coverage under the same conditions that the employer furnishes to other similarly situated employees (i.e., non-retirees). Medicare is secondary payer to the GHP that the employer provides to the re-employed retiree even if the premiums for coverage in the plan are paid from a retirement pension or fund. Medicare is also secondary payer for individuals associated with the employer in a business relationship such as consultants who are former employees, if the employer provides coverage for other such individuals.

## 10.2 - Individuals Not Subject to the Limitation on Payment
*(Rev. 118, Issued: 04-28-16, Effective: 05-31-16, Implementation: 05-31-16)*

The Medicare secondary provision for working aged does not apply to:

- Individuals enrolled in Part B only;

- Individuals enrolled in Part A on the basis of a monthly premium.

- Anyone who is under age 65.  (Medicare is secondary to large group health plans (LGHPs) that cover at least one employer of 100 or more employees for certain disabled individuals under age 65.);

- Individuals covered by a health plan other than a GHP as defined above, e.g., one that is purchased by the individual privately, and not as a member of a group, and for which payment is not made through an employer;

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000004 of 000035

Filed          17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
                                                                              06/16/2017 10:53:16 AM
                                                                                     89824-3

- Employees of employers of fewer than 20 employees who are covered by a single employer plan;

- Retired beneficiaries who are covered by GHPs as a result of past employment and who do not have GHP coverage as the result of their own or a spouse's current employment status;

- Individuals enrolled in single employer GHPs of employers with fewer than 20 employees; or

- Members of multi-employer plans whom the plan identified as employees of employers with fewer than 20 employees, provided the plan formally elected (see §10.4) to exempt the plan from making primary payment for employees and spouses of employees of specifically identified employers with fewer than 20 employees.

- Domestic partners who are given "spousal" coverage by the GHP *(see chapter 1, section 10.1 of the Medicare Secondary Payer Manual)*; and

- Former spouses who have Federal Employees Health Benefit (FEHB) coverage under the Spouse Equity Act.

## 10.3 - The 20-or-More Employees Requirement
**(Rev. 1, 10-01-03)**

The working aged MSP provision applies only to GHPs of employers with 20 or more employees and to multi-employer and multiple employer GHPs in which at least one employer employs 20 or more employees.  This requirement is met if an employer has 20 or more full-time and/or part-time employees for each working day in each of 20 or more calendar weeks in the current or preceding year.  An employer is considered to have 20 or more employees for each working day of a particular week if the employer has at least 20 full-time or part-time employees on its employment rolls each working day of that week. This condition is met as long as the total number of individuals on the employer's rolls adds up to at least 20 regardless of the number of employees who work or who are expected to report for work on a particular day.  Self-employed individuals participating in a GHP are not counted as employees for purposes of determining if the 20-or-more employee requirement is met.  An individual is considered to be on the employment rolls even if the employee does not work on a particular day.  An employer may not have different employment rolls for different days reflecting those scheduled.

Where an employer does not have 20 or more employees in the preceding year, it is required to offer its employees and spouses age 65 or over primary coverage beginning with the point in time at which the employer has had 20 or more employees on each working day of 20 calendar weeks of the current year.  The employer is then required to offer primary coverage for the remainder of that year and throughout the following year

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000005 of 000035

Filed 17-CI-00639 06/09/2017 Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

even if the number of employees drops below 20 after the employer has met the requirement.

The 20-or-more employees requirement must be met at the time the individual receives the services for which Medicare benefits are claimed. If at that time the employer has met the 20-or- more employees requirement in the current year or in the preceding calendar year, the GHP is primary payer. An employer that meets this requirement must provide primary coverage even if less than 20 employees participate in the GHP. (See Chapter 1, §60, for determining the size of employers.)

## 10.4 – Working Aged Exception for Small Employers in Multi-Employer Group Health Plans (GHPs)
**(Rev. 49, Issued: 04-07-06; Effective/Implementation: 05-08-06)**

A multi-employer GHP having at least one employer participating that has at least one employer with 20 or more employees may **prospectively** request to except employees (and their spouses) of identified employers with fewer than 20 employees from the working aged provision. Such members and their spouses are not subject to the working aged provision once an exception has been granted as long as the employer continues to meet the requirements for the exception.

Be advised that it is the GHP's responsibility to provide written updates of any information that may affect the original exception request (updates should include identification of any employees not previously identified as well as information on any terminated coverage issues, etc.) to the Coordination of Benefits Contractor (COBC) as soon as any changes take place.

The contractor shall forward any Small Employer Exception inquiry or request it receives to the COBC within 14 calendar days of receipt (this includes the previously specified documentation). The contractor shall simultaneously issue the PC generated model interim response shown in Exhibit A. Additionally, if the contractor receives an inquiry or request via telephone, the contractor shall inform the caller that the COBC is responsible for addressing such issues. The contractor shall direct the caller to submit the inquiry or request in writing to the COBC, at the address shown below.

**Exhibit A**

**[Insert: DATE]**

**[Insert: Name of Individual/Entity Who Made the Inquiry]**

**[Insert: Street Address]**

**[Insert: City, State, Zip]**

Re:     Procedures for Excepting Small Employers Participating in a Multi-employer Plan for the Working Aged

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000006 of 000035

Filed          17-CI-00639          06/09/2017          Amy Feldman, Franklin Circuit Clerk          NOT ORIGINAL DOCUMENT
                                                                                                  06/16/2017 10:53:16 AM
                                                                                                  89824-3

**[Insert: Name of employer and/or GHP if included in the inquiry]**

Dear (Sir/Madam)

Thank you for your inquiry on the multi-employer exception to the Medicare Secondary Payer provisions for the working aged employers with less than 20 employers.  In order for your inquiry to be appropriately addressed, it will be forwarded to the Coordination of Benefits Contractor (COBC).  After reviewing your inquiry, the COBC will respond accordingly.

Please be advised that it is the GHP's responsibility to provide written updates of any information that may affect/change the original exception request.  Updates include identification of any employees not previously identified as well as information on any terminated coverage issues, etc. This information must be submitted to the COBC as soon as any change takes place.  Updates must be submitted in writing directly to the COBC at the address provided below.

> Medicare Coordination of Benefits
> Attn:  Small Employer Exception Request
> P.O. Box 125
> New York, NY 10274-0125

If you have any questions concerning this letter, please call the COBC at 1-800-999-1118.

> Sincerely,

## 20 - Medicare Secondary Payer Provisions for End-Stage Renal Disease (ESRD) Beneficiaries
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Medicare is secondary payer to GHPs for individuals eligible for, or entitled to Medicare benefits based on ESRD during a coordination period described below.  (See Chapter 1, "Background and Overview," §20, for definitions of eligibility and entitled.)  This provision applies regardless of the number of employees employed by the employer and regardless of whether the individual or other family member has current employment status.  The ESRD provision applies to former as well as to current employees.  This provision applies where an individual is eligible for Medicare based on ESRD and where an individual is entitled to Medicare based on ESRD.  An individual who has ESRD but who has not filed an application for entitlement to Medicare on that basis is eligible for Medicare based on ESRD for purposes of §20.1.1 or §20.1.3 if the individual meets the other requirements in Medicare Pub. 100-01, Medicare General Information, Eligibility and Entitlement, Chapter 2, §10.4.

Prior to August 10, 1993 (the enactment date of OBRA 1993), if an individual was eligible for, or entitled to Medicare on more than one basis (i.e., ESRD and disability or

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000007 of 000035

Filed          17-CI-00639      06/09/2017          Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                           06/16/2017 10:53:16 AM
                                                                           89824-3

ESRD and age), Medicare was the primary payer. This is because the ESRD MSP provision only applied with respect to individuals who were eligible for, or entitled to Medicare based solely on ESRD. However, in general, §13561(c)(2) and (3) of OBRA 1993 provided that plans must pay primary benefits during the coordination period regardless of whether the individual is also entitled to Medicare on another basis. (See §20.1.3 for dual entitlement provisions. Specifically, see §20.1.3.B, which discusses the dual entitlement provision under which a GHP remains secondary to Medicare during the 30-month coordination period and litigation challenging that provision.)

This provision applies to all Medicare-covered items and services furnished to beneficiaries who are in the 30-month period, including services for non-ESRD treatment and services required by kidney donors in cases of transplantation. This limitation applies for claims processing for items or services furnished to ESRD beneficiaries who are in their 30-months of eligibility or entitlement on the basis of ESRD.

## 20.1 - Determining the 30 Month Coordination Period During Which Medicare May Be Secondary Payer
**(Rev. 1, 10-01-03)**

If Medicare was not the proper primary payer for an individual on the basis of age or disability at the time the individual became eligible for or entitled to Medicare on the basis of End Stage Renal Disease, Medicare is secondary payer to GHPs for items and services furnished during a period of up to 30 consecutive months which begins with the earlier of:

- The month in which a regular course of renal dialysis is initiated, or

- If the patient undergoes a course of self-dialysis training the first day of the month in which the training occurred, or

- If an individual who received a kidney transplant, the first month in which the individual became entitled.

**NOTE:** In the rare case of an untimely application by an individual who receives a transplant, the 30-month period could begin with the first month in which the individual would have been eligible for or entitled to Medicare benefits if a timely application had been filed. (See Medicare Pub 100-1, Medicare General Information, Eligibility and Entitlement, Chapter 2, §10.4, for the earliest possible month of eligibility or entitlement in transplant cases.) It is not necessary to consider this possibility absent a specific indication, e.g., information that the transplant occurred before the first month of eligibility or entitlement. If further development is required, the contractor should contact the SSO.

When the 30-month period begins before the month the individual becomes eligible for or entitled to Medicare, contractors pay secondary benefits for the portion of the period during which the individual is eligible or entitled. The latter is the coordination period

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000008 of 000035

Filed        17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk        NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

(See Chapter 1, §20). Medicare entitlement usually begins with the third month after the month in which the individual starts a regular course of dialysis.

## 20.1.1 - Duration of Coordination Period
**(Rev. 1, 10-01-03)**

The coordination period is a period that begins with the earlier of the first month of entitlement to or eligibility for Medicare Part A based on ESRD. Eligibility refers to the first month the individual would have become entitled to Medicare Part A on the basis of ESRD if he/she had filed an application for such benefits.

Immediately prior to enactment of the Balanced Budget Act (BBA) of 1997, Medicare benefits were secondary to benefits payable under a GHP in the case of individuals eligible for or entitled to benefits on the basis of ESRD during an 18-month coordination period. Prior to OBRA 90, the ESRD coordination period was 9 to 12 months. The BBA extended the coordination period to 30 months for any individual whose coordination period began on or after March 1, 1996. Therefore, individuals who have not completed an 18-month coordination period by July 1, 1997, will have a 30-month coordination period.

**EXAMPLE 1:**

Coordination Period Ended on or Before July 31, 1997:

An individual began a course of maintenance dialysis in October 1995. He became entitled to Medicare based on ESRD effective January 1, 1996. The GHP must pay primary to Medicare through June 1997, the end of the 18-month period.

**EXAMPLE 2:**

Coordination Period Began on or After March 1, 1996:

An individual began maintenance dialysis on November 17, 1996, and thus becomes entitled to Medicare effective February 1, 1997. Medicare is secondary payer from February 1, 1997, through July 1999, a total of 30 months.

Eligibility refers to the first month the individual would have become entitled to Medicare Part A on the basis of ESRD if an application were filed for such benefits. In the rare case of an untimely application by an individual, the coordination period could begin with the first month in which the individual would have been entitled to Medicare benefits if a timely application had been filed. (See Pub 100-01, Medicare General Information, Eligibility, and Entitlement Manual, Chapter 2, §§10.4.2 and 10.4.3, for the earliest possible month of entitlement in self-dialysis training or transplant cases.) It is not necessary to consider this possibility absent a specific indication, e.g., information that the transplant occurred before the first month of entitlement. If further development is required, contractors contact the RO.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000009 of 000035

Filed          17-CI-00639      06/09/2017        Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                            06/16/2017 10:53:16 AM
                                                                                    89824-3

When the coordination period begins before the month the individual becomes entitled to
Medicare, the contractor pays secondary benefits for the portion of the period during
which the individual is entitled.  (See §20.1.1.)  Medicare entitlement usually begins with
the third month after the month in which the individual starts a regular course of dialysis.
However, for individuals who undertake a course in self-dialysis training or who receive
a kidney transplant during the 3-month waiting period, Medicare may be the secondary
payer for up to the first 30 months of the individual's entitlement.

Individuals eligible for Medicare on the basis on ESRD cannot enroll for Part B in a SEP
but can defer entitlement to both Part A and B and file an initial application later, usually
at the end of the coordination period.

**A.  30-Month Coordination Period as a Result of the BBA of 1997**

Section 4631(b) of the BBA of 1997 permanently extends the coordination period to 30
months for any individual whose coordination period began on or after March 1, 1996.
Therefore, individuals who have not completed an 18-month coordination period by July
31, 1997, will have a 30-month coordination period under the new law.  This provision
does not apply to individuals who would reach the 18-month point on or before July 31,
1997.  These individuals would continue to have an 18-month coordination period.

## 20.1.2 - Determination for Subsequent Periods of ESRD Eligibility
(Rev. 1, 10-01-03)

If an individual has more than one period of eligibility or entitlement based solely on
ESRD, a coordination period is determined for each period of eligibility in accordance
with §20.1.1, subsection A.  If Medicare entitlement is not correctly terminated three
years after a successful transplant, it is still considered a new period of eligibility and
consequently a new coordination period begins.

## 20.1.3 - Dual Eligibility/Entitlement Situations
(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)

If an individual also becomes entitled to Medicare based on age 65 or disability after
being entitled based on ESRD, the coordination period continues for the remainder of the
30-months if Medicare was properly the secondary payer at the time of the dual
entitlement.

When an individual is eligible for, or entitled to Medicare based on ESRD and also
entitled on the basis of age or disability, the coordination of benefits is described below.

Except as provided in subsection B, GHPs are subject to a 30-month coordination period
for any plan enrollee eligible for, or entitled to Medicare based on ESRD, regardless of
whether that individual also is entitled to Medicare on the basis of age or disability.  The
30-month period coincides with the first 30 months of ESRD-based Part A Medicare

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000010 of 000035

eligibility or entitlement.  (Under previous law, Medicare automatically became the primary payer at the point of dual Medicare eligibility/entitlement.)  As long as dual eligibility/entitlement exists, the ESRD MSP provision applies exclusively.  Medicare becomes the primary payer after the 30th month of ESRD-based eligibility/entitlement even though plan coverage may be in effect by reason of current employment status.  That is, the working aged MSP provisions (see §10) and the disability MSP provisions (see §30) do not apply to individuals with ESRD during or after the 30-month coordination period.

Subsection A, below, deals with coordination periods governed by present law and provides examples.  Subsection B specifies the circumstances under which the ESRD MSP provision does not apply in dual entitlement situations and provides an example.  Subsection C deals with circumstances in which Medicare continues to be primary when an individual is entitled to Medicare based on age or disability and then ESRD with no GHP coverage but obtains GHP coverage during the coordination period and provides an example.  Subsection D deals with the effect of the cessation of dual entitlement.

A - Circumstances in Which Medicare Continues to be Secondary After Aged or Disabled Beneficiary Becomes Eligible for, or Entitled to Medicare on the Basis of ESRD

Medicare is secondary payer during the first 30 months of ESRD-based eligibility and entitlement and becomes primary payer after the 30th month of ESRD-based eligibility or entitlement if Medicare was not properly primary prior to ESRD-based eligibility.  (Refer to subsection B below if Medicare is properly primary.)

**EXAMPLE 1**

Mr. C, who is 67 years old and entitled to Medicare on the basis of age, has GHP coverage by virtue of current employment status.  Mr. C is diagnosed as having ESRD and begins a course of maintenance dialysis on June 27, 2000.  Effective September 1, 2000, Mr. C is eligible for Medicare on the basis of ESRD.  Medicare, which was secondary because Mr. C's GHP coverage was by virtue of current employment, continues to be secondary payer through February 2003, the 30th month of ESRD-based eligibility, and becomes primary payer beginning March 2003.

**EXAMPLE 2**

Mr. D retired at age 62 and maintained GHP coverage as a retiree.  In January 2000 at the age of 64, Mr. D became entitled to Medicare based on ESRD.  Seven months into the 30-month coordination period (July 2000), Mr. D turned age 65.  The coordination period continues without regard to age-based entitlement with the retirement plan continuing to pay primary benefits through June 2003, the 30th month of ESRD-based entitlement.  Thereafter, Medicare becomes the primary payer beginning July 2003.

**EXAMPLE 3**

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000011 of 000035

Filed                17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                        06/16/2017 10:53:16 AM
                                                                        89824-3

Mr. E retired at age 62 and maintained GHP coverage as a retiree.  In July 2000, he simultaneously became eligible for Medicare based on ESRD (maintenance dialysis began in April 2000) and entitled based on age.  The retirement plan must pay benefits primary to Medicare from July 2000 through December 2002, the first 30 months of ESRD-based eligibility.  Medicare becomes the primary payer beginning January 2003.

B - Circumstances in Which Medicare Continues to be Primary After Aged or Disabled Beneficiary Becomes Eligible on Basis of ESRD

Medicare remains the primary payer when an individual becomes eligible for Medicare based on ESRD if both of the following conditions are met:

- The individual is already entitled on the basis of age or disability when he/she becomes eligible on the basis of ESRD.

- The MSP prohibition against "taking into account" age-based or disability-based entitlement does not apply because plan coverage was not "by virtue of current employment status" or the employer had fewer than 20 employees (in the case of the aged) or fewer than 100 employees (in the case of the disabled).

The plan may continue to pay benefits secondary to Medicare under this subsection. However, the plan may not differentiate in the services covered and the payments made between persons who have ESRD and those who do not.

**EXAMPLE**

Mrs. G, who is 67 years of age, is retired.  She has GHP retirement coverage through her former employer.  Her plan permissibly took into account her age-based Medicare entitlement when she retired and is paying benefits secondary to Medicare.  Mrs. G subsequently develops ESRD and begins a course of maintenance dialysis in October 2000.  She automatically becomes eligible for Medicare based on ESRD effective January 1, 2001.  The plan continues to be secondary on the basis of Mrs. G's age-based entitlement as long as the plan does not differentiate in the services it provides to Mrs. G and does not do anything else that would constitute "taking into account" her ESRD-based eligibility.

C – Circumstances in Which Medicare Continues to be Primary When Individual is Entitled to Medicare Based on Age or Disability and then ESRD with no GHP Coverage but Obtains GHP Coverage During the Coordination Period

If Medicare is the proper primary payer for services when eligibility for Medicare based on ESRD is established, Medicare remains the primary payer (during the coordination period and afterwards).  Medicare is considered to be the primary payer when Medicare is the only payer or Medicare is legally obligated to be the primary payer to any GHP coverage.

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000012 of 000035

Filed          17-CI-00639       06/09/2017        Amy Feldman, Franklin Circuit NOT ORIGINAL DOCUMENT
                                                                            06/16/2017 10:53:16 AM
                                                                            89824-3

**EXAMPLE**

Mr. Z is 67 years old and has Medicare based on age.  He has no GHP coverage.  Mr. Z develops ESRD and begins a course in maintenance dialysis and becomes eligible for Medicare based on ESRD which triggers the 30-month coordination period.  However, Mr. Z has no GHP coverage and Medicare continues as the primary payer.  In the 6th month of the coordination period Mr. Z obtains coverage through his wife's GHP.  Since Medicare was the proper primary payer when eligibility for ESRD was established, Medicare remains the primary payer.

D **-** Dual Eligibility/Entitlement Ceases

If ESRD-based eligibility or entitlement ceases in accordance with the Medicare Pub. 100-01, Medicare General Information, Eligibility and Entitlement, Chapter 2, §10.4, Medicare is the primary payer unless plan coverage is in effect by virtue of current employment status, and the provisions of §§10 and 20 or 30 apply.

## 20.2 - Effect of ESRD MSP on Consolidated Omnibus Budget Reconciliation Act (COBRA)
**(Rev. 1, 10-01-03)**

### A.  General

The COBRA requires that certain GHPs offer continuation of plan coverage for 18 to 36 months after the occurrence of certain qualifying events, including loss of employment or reduction of employment hours.  Those are events that otherwise would result in loss of GHP coverage unless the individual is given the opportunity to elect and does elect to continue plan coverage at his/her own expense.

On June 8, 1998, the Supreme Court in "Geissal v. Moore Medical Corp." invalidated the COBRA continuation of health care coverage regulations with respect to when a GHP may terminate COBRA coverage.  The court ruled that individuals who obtain other coverage (including Medicare) on or before the COBRA election date are permitted to continue this coverage along with COBRA.  Thus, where ESRD-based Medicare entitlement predates the COBRA qualifying event, the plan is obligated to offer COBRA coverage for a qualifying event such as termination of employment.  To the extent the period of COBRA coverage overlaps the ESRD MSP coordination period, COBRA is primary and the employer plan has no discretion to terminate COBRA because of the ESRD-based Medicare entitlement.  Those individuals who obtain other coverage (including Medicare) after the COBRA election date can be terminated from COBRA coverage.  This means that where COBRA coverage came first, the employer may terminate existing COBRA coverage under its health plan when Medicare entitlement occurs.  Where COBRA expressly permits termination of continuation coverage upon entitlement to Medicare there is one exception.  The exception is that the plan may not terminate continuation coverage of an individual (and the individual's qualified dependents) if the individual retires on or before the date the employer substantially

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000013 of 000035

Filed          17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                               06/16/2017 10:53:16 AM
                                                                                      89824-3

eliminates regular plan coverage by filing for Chapter 11, Bankruptcy.  (See 26 U.S.C. 4980B(g)(1)(D), 29 U.S.C. 1162(2)(D), and 1167(3)(C).)

**B.  Medicare is Secondary to COBRA Coverage**

To the extent COBRA coverage overlaps the 30-month ESRD MSP coordination period, Medicare is secondary payer for benefits that a GHP:

- Is required to keep in effect under the COBRA continuation requirements where Medicare entitlement occurs first; or

- Is required to keep in effect under the COBRA continuation requirements even after the individual becomes entitled to Medicare based on ESRD (i.e., the bankruptcy situation as described in subsection A above); or

- Voluntarily keeps in effect after the individual becomes entitled to Medicare on the basis of ESRD even though not obligated to do so under the COBRA provisions.

## 30 - Medicare Secondary Payer Provision for Disabled Beneficiaries
**(Rev. 1, 10-01-03)**

Medicare is secondary payer to "large group health plans" (LGHPs) for individuals under age 65 entitled to Medicare on the basis of disability and whose LGHP coverage is based on the individual's current employment status or the current employment status of a family member.  (See Chapter 1, §50, for definition.)  Under the law, a LGHP may not "take into account" that such an individual is eligible for, or receives, Medicare benefits based on disability.  Apply the instructions in chapter 1 in processing claims where Medicare is secondary payer for disabled individuals.  Where those sections refer to a GHP of 20 or more employees, substitute the term "large group health plan" as defined in Chapter 1, §20, to apply them to disabled individuals.

Medicare is secondary payer to LGHP coverage based on an individual's or family members current employment status for services provided on or after August 10, 1993.

## 30.1 - Individuals Not Subject to MSP Provision
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Medicare is **not** secondary under the MSP for the disabled provision for individuals:

- Who work or whose family member works for employers of fewer than 100 employees unless the GHP is a multi-employer plan in which at least one employer of 100 or more employees participates;

- Covered by an LGHP as a result of past employment (e.g., as a retired former employee or as the spouse of a retired former employee) and whose coverage is not also

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000014 of 000035

Filed                17-CI-00639      06/09/2017         Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                                       06/16/2017 10:53:16 AM
                                                                                             89824-3

based on current employment status of their own or a family members current
employment status (see Chapter 1, §50);

- Covered by a health plan other than an LGHP (e.g., one that is purchased by the
  individual privately and not through an employer);

- Who have FEHB coverage under the Spouse Equity Act;

o Individuals enrolled in Part B only; or

o Individuals enrolled in Part A on the basis of a monthly premium.

## 30.2 - The 100 or More Employees Requirement
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

- The Medicare as secondary for the disabled provision applies only to LGHPs that
  cover employees of at least one employer that employed 100 or more full-time
  and/or part-time employees on 50 percent or more of its business days during the
  previous calendar year.

- Medicare is secondary for all employees enrolled in the plan if a plan is a multi-
  employer plan, such as a union plan which covers employees of some small
  employers and also employees of at least one employer that meets the 100-or-
  more employee requirement, including those that work for small employers.  The
  exception discussed in §10.4 with respect to the working aged provision does not
  apply to the Medicare as secondary for the disabled provision.  An employer will
  be considered to employ 100 or more employees on a particular day if the
  employer has at least 100 full-time or part-time employees on his/her employment
  rolls on that day.  This condition is met as long as the total number of individuals
  on the employer's rolls adds up to at least 100 regardless of the number of
  employees who work or who are expected to report for work on that day.

Self-employed individuals who participate in an LGHP are not counted as employees for
purposes of determining if the 100-or-more employee requirement is met.  If an employer
does not meet the 100-or-more employees requirement in a particular year, the employer
may offer employees coverage that is secondary to Medicare during the following year.
If the employer meets the 100-or-more employee requirement at any time during the
current year, the employer is required to provide employees with coverage that is primary
to Medicare during the following year.

## 30.3 - Disabled Individuals Who Return to Work
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

- If a disabled individual who has LGHP coverage based on prior service to the
  employer returns to work, the coverage is considered to be by virtue of current
  employment status if the employer provides coverage to similarly situated

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000015 of 000035

Filed          17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                    06/16/2017 10:53:16 AM
                                                                                    89824-3

individuals who are not disabled.  Similarly situated individuals are individuals who work in the same category of employment and who perform the same amount of work.  Such services may be based, for example, on the number of hours worked or the amount of earnings.

## 30.4 - Dually Entitled Individuals
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

If a disabled individual is also eligible for, or entitled to Medicare under the ESRD provisions, follow the rules in §20.1.3 under which Medicare is secondary payer for the applicable 30-month coordination period.

## 40 - Liability Insurance
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Under §1862(b)(2) of the Act, (42 U.S.C. 1395y(b)(1)), Medicare does not make payment for covered items or services to the extent that payment has been made, or can reasonably be expected to be made under a liability insurance policy or plan (including a self-insured plan). Under certain circumstances, Medicare may make conditional payments if the liability insurance will not pay or will not pay promptly. Conditional payments are conditioned on reimbursement to the Medicare program to the extent that payment with respect to the same items or services has been made, or could be made, under a liability insurance policy or plan (including a self-insured plan).

## 40.1 - Medicare's Recovery Rights
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Medicare has a statutory direct right of recovery from the liability insurance as well as any entity that has received payment directly or indirectly from the proceeds of a liability insurance payment.  Medicare's recovery rights take precedence over the claims of any other party, including Medicaid.  Medicare's recovery right is superior to other entities including Medicaid because Medicare's direct right of recovery is explicitly prescribed in Federal law and other entities' recovery rights are based on either State law or subrogation rights.

In addition to its direct rights of recovery, Medicare has subrogation rights. "Subrogation" literally means the substitution of one person or entity for another.  If Medicare exercises its subrogation rights, Medicare is a claimant against the responsible party and the liability insurer to the extent that Medicare has made payments to or on behalf of the beneficiary for services related to claims against the alleged tortfeasor (and the alleged tortfeasor's liability insurance).  Medicare can be a party to any claim by a beneficiary or other entity against an alleged tortfeasor and/or his/her liability insurance and can participate in negotiations concerning the total liability insurance payment and the amount to be repaid to Medicare.

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000016 of 000035

Filed          17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

## 40.2 - Billing in MSP Liability Insurance Situations
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

A - Difference Between Liability Insurance and Other Primary Plans

Liability insurance differs from the other insurance policies or plans that, under §1862(b) of the Act, are primary to Medicare.  In the case of other types of insurance that are primary to Medicare, i.e., no-fault insurance, group health plans, and workers' compensation, the insurance has a contractual obligation to pay for medical services provided to the covered/injured person.  Liability insurance, however, has a contractual obligation to compensate the alleged tortfeasor for any damages the alleged tortfeasor must pay to an injured party.

B – Billing Options and Requirements – Alternative Billing

Generally, providers, physicians, and other suppliers must bill liability insurance prior to the expiration of the promptly period rather than bill Medicare.  (The filing of an acceptable lien against a beneficiary's liability insurance settlement is considered billing the liability insurance.)  Promptly means payment within 120 days after the earlier of: 1) the date the claim is filed with an insurer or a lien is filed against a potential liability settlement; or 2) the date the service was furnished or, in the case of inpatient hospital services, the date of discharge) rather than bill Medicare.  Following expiration of the promptly period, or if demonstrated (e.g., a bill/claim that had been submitted but not paid) that liability insurance will not pay during the promptly period, a provider, physician, or other supplier may either:

- bill Medicare for  payment and withdraw all claims/liens against the liability insurance/beneficiary's liability insurance settlement (liens may be maintained for services not covered by Medicare and for Medicare deductibles and coinsurance); or

- maintain all claims/liens against the liability insurance/beneficiary's liability insurance settlement.

C – Special Rule for Oregon

As a result of a court order, providers, physicians, and other suppliers in Oregon:

- may either (i.e., double billing is not permitted) bill Medicare or bill liability insurance (the filing of a lien against a beneficiary's liability insurance settlement is considered billing the liability insurance) if the liability insurer pays within 120 days after the earlier of the following dates:

  o the date the provider or supplier files a claim with the insurer or places a lien against a potential liability settlement; or

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000017 of 000035

Filed          17-CI-00639     06/09/2017        Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
                                                                           06/16/2017 10:53:16 AM
                                                                           89824-3

      ○ the date the services were provided or, in the case of inpatient hospital services, the date of discharge.

- must withdraw claims/liens against the liability insurance/beneficiary's liability insurance settlement following expiration of the 120-day period and bill Medicare.

However, CMS will not terminate the provider agreement of a provider that does not comply with the court order if that provider is following the procedures outlined in B above.

D – Charges to Beneficiaries

<u>Provider Charges to Beneficiaries for Services Covered By Medicare</u>

The following applies to providers who participate in Medicare, emergency hospitals who do not participate in Medicare, and foreign hospitals with an election to bill Medicare:

- if the provider bills Medicare, the provider must accept the Medicare approved amount as payment in full and may charge beneficiaries only deductibles and coinsurance.

- if the provider pursues liability insurance, the provider may charge beneficiaries actual charges, up to the amount of the proceeds of the liability insurance less applicable procurement costs but may not collect payment from the beneficiary until after the proceeds of the liability insurance are available to the beneficiary.

<u>Physician and Other Supplier Charges to Beneficiaries for Services Covered By Medicare</u>

The following applies to physicians and other suppliers who participate in Medicare:

- if the physician or other supplier bills Medicare, the physician or other supplier must accept the Medicare approved amount as payment in full and may charge beneficiaries only deductibles and coinsurance.

- if the physician or other supplier pursues liability insurance, the physician or other supplier may charge beneficiaries actual charges, up to the amount of the proceeds of the liability insurance less applicable procurement costs but may not collect payment from the beneficiary until after the proceeds of the liability insurance are available to the beneficiary.

The following applies to physicians and other suppliers who do not participate in Medicare and who submit or would be required to submit an assigned claim:

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000018 of 000035

Filed                17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                                    06/16/2017 10:53:16 AM
                                                                                         89824-3

- if the physician or other supplier bills Medicare, the physician or other supplier must accept the Medicare approved amount as payment in full and may charge beneficiaries only deductibles and coinsurance.

- if the physician or other supplier pursues liability insurance, the physician or other supplier may charge beneficiaries actual charges, up to the amount of the proceeds of the liability insurance less applicable procurement costs but may not collect payment from the beneficiary until after the proceeds of the liability insurance are available to the beneficiary.

Physicians and other suppliers who do not participate in Medicare and who submit an unassigned claim may charge beneficiaries no more than the limiting charge and may collect without regard to whether the liability insurance is available to the beneficiary.

Physicians and other suppliers who do not participate in Medicare, do not submit an unassigned claim, and are not required to submit an assigned claim if they submitted a claim to Medicare, may pursue liability insurance but the amount may not exceed the limiting charge.

<u>Charges to Beneficiaries for Services Not Covered by Medicare</u>

- For services for which there is no Medicare coverage available regardless of who furnishes them, providers, physicians, and other suppliers may charge and collect actual charges from beneficiaries without regard to whether the proceeds of the liability insurance are available to the beneficiary.

- For services of foreign hospitals that have no election to bill Medicare, providers may charge and collect actual charges from beneficiaries without regard to whether the proceeds of the liability insurance are available to the beneficiary.

- For services of foreign physicians and other suppliers, the physician or other supplier may charge and collect actual charges from beneficiaries without regard to whether the proceeds of the liability insurance are available to the beneficiary.

E – Provider, Physician, or Other Supplier Bills Medicare and Maintains Claim/Lien Against the Liability Insurance/Beneficiary's Liability Insurance Settlement

As cited above in B, providers, physicians, and other suppliers must withdraw all claims/liens against liability insurance/beneficiary's liability insurance settlement (except for claims related to services not covered by Medicare and for Medicare deductibles and coinsurance) when they bill Medicare.  You may learn of a situation where the provider, physician, or other supplier billed Medicare but did not withdraw the claim/lien.  In such situations you must:

- Advise the provider, physician, or other supplier and beneficiary that the act of billing Medicare limits the payment that the provider, physician, or other supplier

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000019 of 000035

Filed          17-CI-00639        06/09/2017          Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

may receive for the services billed to the Medicare approved amount.  This applies even if Medicare did not pay the claim or the provider, physician, or other supplier refunded the Medicare payment to Medicare.

- If the provider, physician, or other supplier collected on a claim/lien after billing Medicare, advise the provider, physician, or other supplier and beneficiary that:

  - the provider, physician, or other supplier must refund the Medicare payment  in instances where the amount collected on the claim/lien is for the full charges of the claim/lien and the Medicare payment is greater than or equal to the full charges of the claim/lien and greater than or equal to the amount collected on the claim/lien (see example one below for an illustration of this policy); or

  - the provider, physician, or other supplier must refund the lesser of the amount collected on the claim/lien or the Medicare payment in instances where the amount collected on the claim/lien is  less than the full charges of the claim/lien due to policy limits (see example two below for an illustration of this policy); and

  - the provider, physician, or other supplier must refund to the beneficiary the difference between the amount collected on the claim/lien and the Medicare payment if the provider, physician, or other supplier received payment for services not covered by Medicare and for Medicare deductibles and coinsurance (see example three below for an illustration of this policy); or

  - the provider, physician, or other supplier must refund to the beneficiary the difference between the amount collected on the claim/lien and the Medicare payment less any amounts due from the beneficiary for services not covered by Medicare and for Medicare deductibles and coinsurance (see example four below for an illustration of this policy).

  EXAMPLES

    Example one:  Charges from the facility are $5,000.  Medicare is billed.  The facility receives $8,000 from Medicare.  The facility receives $5,000 from the liability insurance.  The facility must repay Medicare $8,000.

    Example two:  Charges from the facility are $150,000.  Medicare is billed.  The facility receives $110,000 from Medicare.  The facility receives $100,000 (due to policy limits) from the liability insurance. The facility must repay Medicare $100,000.

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000020 of 000035

Example three: Charges from the facility are $1,000. Medicare is billed. The Medicare allowable is $800.00. The Medicare deductible has been satisfied. The Medicare coinsurance of $160.00 has been paid. There are no charges for non-covered Medicare services. The facility receives $640.00 from Medicare. The facility receives $1,000 from the liability insurance. The facility must repay Medicare $640.00 and send $360.00 to the Medicare beneficiary.

Example four: Charges from the facility are $1,000. Medicare is billed. The Medicare allowable is $800.00. The Medicare deducible has been satisfied. The Medicare coinsurance of $160.00 has not been paid. There are $50.00 in charges for non-covered Medicare services. The facility receives $640.00 from Medicare. The facility receives $1,000 from the liability insurance. The facility must repay Medicare $640.00. The facility may retain $210.00 for the unpaid Medicare coinsurance and charges for the non-covered Medicare services. The facility must send to the Medicare beneficiary the remainder of the liability insurance payment ($150.00).

F – Permissible Liens

The MSP provisions do not create lien rights when those rights do not exist under State law. Where permitted by State law, a provider, physician, or other supplier may file a lien for full charges against a beneficiary's liability settlement. (A lien against a beneficiary will be considered a lien against a liability settlement if there is a binding agreement that the lien will only be enforced if there is a settlement and will be withdrawn otherwise.)

- The provider, physician, or other supplier may enforce a permissible lien up to the lesser of the amount of the settlement and charges for the services incorporated in the lien. The provider, physician, or other supplier may not charge interest, lien filing, and administrative fees to the beneficiary or against the lien.

## 50 - Workers' Compensation (WC)
**(Rev. 113, Issued: 08-06-15, Effective: 01-01-16, Implementation: 01-04-16)**

### A - General

Payment under Medicare may not be made for any items and services to the extent that payment has been made or can reasonably be expected to be made for such items or services under a WC law or plan of the United States or any State. If it is determined that Medicare has paid for items or services that can be or could have been paid for under WC, the Medicare payment constitutes an overpayment.

This limitation also applies to the WC plans of the District of Columbia, American Samoa, Guam, Puerto Rico, and the Virgin Islands. It also applies to the Federal WC

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000021 of 000035

Filed          17-CI-00639      06/09/2017        Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                          06/16/2017 10:53:16 AM
                                                                                          89824-3

plans provided under the Federal Employees' Compensation Act, the U.S. Longshoremen's and Harbor Workers' Compensation Act and its extensions, and the Federal Coal Mine Health and Safety Act of 1969 as amended (the Federal Black Lung Program).

These Federal programs provide WC protection for Federal Civil Service employees and certain other categories of employees not covered, or not adequately covered, under State WC programs, for example:

- Coal miners totally disabled due to pneumoconiosis;

- Maritime workers (with the exception of seamen);

- Employees of companies performing overseas contracts with the United States government;

- Employees of American companies who are injured in an armed conflict;

- Employees paid from nonappropriated Federal funds (such as employees of post-exchanges);

- Offshore oil field workers; and

- Qualified claimants under the Department of Labor's Energy Employees Occupational Illness Compensation Program.

The Federal Employers' Liability Act, which covers merchant seamen and employees of interstate railroads, is not a WC law or plan for purposes of this exclusion. Similarly, some States have employers' liability acts. These also are not considered WC acts for purposes of this exclusion. However, they are considered liability insurance and the MSP liability rules apply.

All WC acts require that the employer furnish the employee with necessary medical and hospital services, medicines, transportation, apparatus, nursing care, and other necessary restorative items and services. However, in some States there are limits to the amount of medical and hospital care provided. For specific information regarding the WC plan of a particular State or territory, contact the appropriate agency of that State or territory. If payment for services cannot be made by WC because they were furnished by a source not authorized by WC, such services can be paid for by Medicare.

The beneficiary is responsible for taking whatever action is necessary to obtain payment under WC where payment under that system can reasonably be expected (e.g., timely filing a claim, furnishing all necessary information). If failure to take proper and timely action results in a loss of WC benefits, Medicare benefits are not payable to the extent that payment could reasonably have been expected under WC.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000022 of 000035

Filed 17-CI-00639 06/09/2017 Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

## B. - Workers' Compensation Medicare Set-Aside Arrangements (WCMSAs)

A WCMSA is an allocation of funds from a workers' compensation (WC) settlement, judgment or award for future medical and/or future prescription drug expenses related to the WC injury and/or illness/disease. Where a WC settlement specifies that a portion of the settlement is for a WCMSA, Medicare may not pay for future medical and/or prescription drug services until the administrator of the WCMSA provides evidence that payments were made appropriately for services that Medicare would otherwise reimburse and that the funds deposited in the WCMSA account were appropriately exhausted (disbursed only for services related to the WC injury or illness/disease). In addition, Medicare will not pay conditionally for diagnosis codes related to the set-aside occurrence. Once the set-aside amount is exhausted and accurately accounted for as set forth in the following sections, Medicare will pay primary for future Medicare covered medical and/or prescription drug expenses related to the WC injury or illness/disease. **NOTE:** There are situations where WCMSA benefits may terminate, or deplete, during a beneficiary's provider facility stay or upon a physician's visit and a residual payment is due. Under these circumstances Medicare may make a residual Medicare secondary payment. The term "residual payment" is defined as: a payment Medicare makes on a claim where available funds have been exhausted from the WCMSA benefit or responsibility for payment terminates mid-service. The shared systems, the A/B MACs, and DME MACs may pay this residual secondary payment by sending the primary payer amounts to the MSPPAY module and calculate Medicare's payment if such services are covered and reimbursable by Medicare.

## 50.1 - Effect of Payments Under Workers' Compensation Plan
**(Rev. 49, Issued: 04-07-06; Effective/Implementation: 05-08-06)**

No Medicare payment may be made if WC has paid an amount:

- Which equals or exceeds the gross amount payable by Medicare;

- Which equals or exceeds the provider's charges for Medicare covered services; or

- The provider, physician or other supplier is either obligated to accept, or voluntarily accepts, a primary plan's payment as full payment.

**NOTE:** In general, WC medical benefits constitute a service benefit, i.e., the payment constitutes full discharge of the patient's liability for services. In such cases, providers are obligated to accept the WC payment as payment in full, and no secondary Medicare benefits are payable. If WC pays for Medicare covered services and under the WC law or plan the provider is not obligated to accept the payment as payment in full, Medicare secondary benefits may be payable as described in Chapter 5, §40.8.1.

## A - Secondary Medicare Payments

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000023 of 000035

Filed          17-CI-00639          06/09/2017          Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
                                                                                                06/16/2017 10:53:16 AM
                                                                                                89824-3

When a primary plan's payment for Medicare covered services is less than the provider's charges for those services and less than the gross amount payable by Medicare, and the provider does not accept and is not obligated to accept the primary plan's payment as full payment, then Medicare secondary payment can be made as appropriate.  In general, the Medicare secondary payment is the least of:

- The Medicare gross payable amount minus the amount paid by the primary plan for Medicare covered services; or,

- The gross amount payable by Medicare minus the applicable deductible and/or coinsurance amount; or

- The provider's charges (or an amount less than the charges that the provider is obligated to accept as payment in full) minus any applicable deductible or coinsurance amounts; or

- The provider's charges (or an amount less than the charges that the provider is obligated to accept as payment in full), minus the amount paid by the primary plan for Medicare covered services.

**NOTE:** Medicare uses the amount the provider is obligated to accept as payment in full when:

1. The provider is obligated to accept an amount that is less than its charges (e.g., under the terms of a preferred provider agreement), and

2. The primary payer pays less than charges and less than the amount the provider is obligated to accept as payment in full for reasons other than failure to file a proper claim (e.g., because of the imposition of a primary payer deductible and/or copayment).

In the absence of a lower amount that the provider is obligated to accept as payment in full, the amount of the provider's actual charges is used in determining Medicare's secondary payment.

If WC pays a physician's or other supplier's full charges for medical services or pays a lesser amount based on its reasonable charge screen or fee schedule which must be accepted as payment in full, secondary Medicare benefits may not be paid to supplement the amount paid by WC.  In addition, the physician or other supplier cannot charge the beneficiary or any other party for the services.  This is because WC medical benefits constitute a service benefit, i.e., the payment constitutes full discharge of the patient's liability for the services.

## B - Workers' Compensation Does Not Pay for All Services

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000024 of 000035

Filed          17-CI-00639      06/09/2017          Amy Feldman, Franklin Circuit Clerk NOT ORIGINAL DOCUMENT
                                                                                      06/16/2017 10:53:16 AM
                                                                                      89824-3

Where WC does not pay for all services furnished to a beneficiary, Medicare benefits may be paid for those services not covered under WC. For example, the services of a physician not authorized to furnish medical care under WC, may be reimbursed under Medicare. (See §50.1.)

**C - Charges Included Non-Work Related Items or Services**

If WC does not pay all of the charges because only a portion of the services is compensable, i.e., the patient received services for a condition which was not work related concurrently with services which were work-related, Medicare benefits may be paid to the extent that the services are not covered by any other source which is primary to Medicare. A physician/supplier is permitted under WC law to charge an individual or the individual's insurer for services that are not work related.

**D - Workers' Compensation Cases Involving Liability Claims**

Most State laws provide that, if an employee is injured at work due to the negligent act of a third party, the employee cannot receive payments from both WC and the third party for the same injury. If the individual is covered by a GHP and is age 65 or over, or is eligible or entitled to Medicare based on ESRD and covered by a GHP, or is under age 65 and has LGHP coverage and entitled to Medicare based on disability, the GHP may also be primary to Medicare. Generally, WC benefits are paid while the third party claim is pending. However, once a settlement of the third party claim is reached or an award has been made, WC may recover the benefits it paid from the third party settlement and may deny any future claims for that injury up to the amount of the liability payment made to the individual.

If WC does not pay for services or recovers benefits it previously paid for services solely because a third party is determined to be liable, Medicare is not secondary under this provision, to the extent of the nonpayment or recovery by WC. However, Medicare may be secondary for services covered under the liability insurance provision. Consider these cases under the policies in §40 and Chapter 7, §§50.8.

**E - Possible Coverage of Work Related Services Under No-Fault Insurance or Group Health Plan**

Where services are covered in part by WC and also under no-fault insurance, WC pays first, the no-fault insurance pays second and Medicare would be the residual payer. (See §60.) If the individual is covered by a GHP and is age 65 or over; or is under age 65 and entitled to Medicare solely because of ESRD, or is entitled as an active individual, including the member of the family of such individual, who is entitled to benefits on the basis of disability, the employer plan coverage may also be primary to Medicare. (See §10, §20, and §30 respectively.)

Accordingly, whenever WC pays in part for services, and the physician or other supplier does not accept and is not obligated to accept such payment as payment in full, and there

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000025 of 000035

Filed          17-CI-00639     06/09/2017        Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

is information which indicates that the services may also be reimbursable under no-fault
insurance or under a GHP, the contractor follows the instructions in the Medicare
Secondary Payer Manual (MSP) Manual, Chapter 5, "Contractor Prepayment Processing
Requirements," §§40.6, or §10.4.

If there is no coverage under no-fault insurance, but another insurer is shown on the bill,
and there is indication of primary GHP coverage under §10, §20, or §30, the other insurer
is to be billed for the services not paid for by WC.  The other insurer is billed because, in
the case of a beneficiary who is injured on the job and who is covered by private health
insurance, it is assumed that the individual is employed and that the other insurance is a
GHP.
If the services provided to the Medicare beneficiary are not related to an automobile
accident (see §60) and there is no indication of primary group health plan coverage under
§10 or §20, Medicare may pay benefits for the services not covered under WC.

**F - Workers' Compensation Pays Only for Services of Certain Physicians**

In some States, physicians' services are covered under WC only if furnished by a
physician selected by the employer or the WC carrier or if furnished by a member of a
panel of physicians authorized to furnish care in WC cases.  In such cases, if the
individual engages the services of another physician (for whose services the individual is
not entitled to receive WC benefits), Medicare payment for such services is not
precluded.

**G - Contested Workers' Compensation Claims**

An employee may appeal the refusal of an employer to pay WC benefits, or an employer
may appeal the award of benefits to an employee by the WC agency.  Such appeals are
generally heard by a hearing officer or judge of the agency, with further appeal from such
decision to the WC agency or appeals board and from there to the courts.  Sometimes
contested claims are settled by compromise agreement between the parties with the
approval of the WC agency.

In general, a decision by a State WC agency on a contested claim, or a compromise
settlement that has been approved by the agency should be accepted as a basis for
applying the WC exclusion, except where the settlement did not make reasonable
provision for payment under WC of all work-related medical expenses.  Thus, where an
individual has been denied WC benefits for a particular illness or injury, the contractor
allows claims for treatment of that condition unless the decision or settlement is clearly
inconsistent with the medical facts and applicable State law and has the effect of shifting
to the Medicare program liability for medical expenses which are the responsibility of the
State WC program.  Where it is clear that an attempt was made to shift responsibility to
the Medicare program, the contractor denies the Medicare claim.  The conclusions should
be explained in detail in the denial notice and state that the beneficiary may wish to
request a reopening under the WC law.

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000026 of 000035

Filed          17-CI-00639       06/09/2017      Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
                                                                 06/16/2017 10:53:16 AM
                                                                 89824-3

## 60 - No-Fault Insurance
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Under §1862(b)(2) of the Act, (42 U.S.C. 1395y(b)(1)), Medicare does not make payment for covered items or services to the extent that payment has been made, or can reasonably be expected to be made under no-fault insurance.  Medicare is secondary to no-fault insurance even if State law or a private contract of insurance stipulates that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries.  Under certain circumstances, Medicare may make conditional payments if the no-fault insurance will not pay or will not pay promptly (i.e., 120 days after receipt of the claim).  Conditional payments are conditioned on reimbursement to the Medicare program to the extent that payment with respect to the same items or services has been made, or could be made, under no-fault insurance.

If services are covered under no-fault insurance, that insurance must be billed first.  If the insurance does not pay all of the charges, a claim for secondary Medicare benefits can be submitted.  Medicare can pay for services related to an accident if benefits are not available under the individual's no-fault insurance coverage because that insurance has paid maximum benefits for the accident on items or services not covered by Medicare or on non-medical items such as lost wages.

The question in each case involving accident-related medical expenses is whether no-fault benefits can be paid for these particular services.  If so, the no-fault insurance is primary.  If not, Medicare may be primary.  Primary Medicare benefits cannot be paid merely because the beneficiary wants to save insurance benefits to pay for future services or for non-covered medical services or non-medical services.  Since no-fault insurance benefits would be available in that situation, they must be used before Medicare can be billed.

If there is an indication that the individual has filed, or intends to file a liability claim against a party that allegedly caused an injury, the contractor follows the procedures related to MSP liability insurance situations once the no-fault insurance is exhausted.

## 60.1 – Medicare's Recovery Rights
**(Rev. 49, Issued:  04-07-06; Effective/Implementation:  05-08-06)**

Medicare has a statutory direct right of recovery from the no-fault insurance as well as any entity that has received payment directly or indirectly from the proceeds of a no-fault insurance payment.  Medicare's recovery rights take precedence over the claims of any other party, including Medicaid.  Medicare's recovery right is superior to other entities including Medicaid because Medicare's direct right of recovery is explicitly prescribed in Federal law and other entities' recovery rights are based on either State law or subrogation rights.

In addition to its direct rights of recovery, Medicare has subrogation rights. "Subrogation" literally means the substitution of one person or entity for another.  If

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000027 of 000035

Filed        17-CI-00639        06/09/2017        Amy Feldman, Franklin Circuit Clerk        NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

Medicare exercises its subrogation rights, Medicare is a claimant against the no-fault insurer to the extent that Medicare has made payments to or on behalf of the beneficiary for services related to claims against the no-fault insurer. Medicare can be a party to any claim by a beneficiary or other entity against no-fault insurance and can participate in negotiations concerning the total no-fault insurance payment and the amount to be repaid to Medicare.

## 70 – Interest on MSP Recovery Claims
**(Rev. 45, Issued: 12-16-05; Effective/Implementation Dates: 01-17-06)**

Section 1862(b)(2)(B)(i) of the Social Security Act (the Act) and 42 C.F.R. 411.24(m) provide express authority to assess interest on Medicare Secondary Payer (MSP) debts. Interest is calculated on MSP debts using the method applicable to Non-MSP Medicare overpayments and underpayments as stated in 42 C.F.R. 405.378. For Medicare overpayments and underpayments and MSP debts, interest is calculated in full 30-day periods. Interest instructions for Medicare overpayments and underpayments are found in Chapter 4, Pub. 100-06, Medicare Financial Management Manual.

## 70.1 – MSP Debt Interest Calculation Methodology
**(Rev. 45, Issued: 12-16-05; Effective/Implementation Dates: 01-17-06)**

With respect to the recovery of payments for items and services furnished before October 31, 1994, CMS charges interest, exercising its common law authority (see 42 CFR 411.24(m)(1).

With respect to the recovery of payments for items and services furnished on or after October 31, 1994, CMS charges interest in accordance with section 1862(b)(2)(B)(i) of the Act (see 42 CFR 411.24(m)(2)). The method for calculating interest is set forth in 42 CFR 405.378. The interest rate on overpayments is determined in accordance with regulations promulgated by the Secretary of the Treasury and is the higher of the private consumer rate or the current value of funds rate prevailing on the date the recovery demand letter is issued.

Interest is computed for both delinquent payments and installment payments as simple interest using a 360-day year. The U.S. Postal Service postmark date (or the date of physical receipt in the contractor's corporate mail area for a commercial shipper) is used to determine the receipt date of the payment.

Interest is calculated for a 30-day period as follows:

- Principal times Prevailing Interest Rate + Interest for Year, and

- Interest for Year divided by 12 = 30-day Interest

Effective October 1, 2004, 42 C.F.R. 405.378 and 42 C.F.R. 411.24 were amended to change how interest is calculated on MSP recoveries. For debts established before

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000028 of 000035

Filed          17-CI-00639     06/09/2017     Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                                                 06/16/2017 10:53:16 AM
                                                                                                 89824-3

October 1, 2004, interest on delinquent debt is due and payable for the entire 30-day period as of the first day of each 30-day period.  For debts established on or after October 1, 2004, interest on delinquent debts is due and payable as of the end of each 30-day period.

## 70.2 – MSP Debt Interest Accrual
### (Rev. 45, Issued:  12-16-05; Effective/Implementation Dates:  01-17-06)

Interest "accrues" from the date of the recovery demand letter but is not "assessed" unless/until the debt becomes delinquent, (i.e., if the first demand letter provided for 60 days for the debtor to repay the debt and was dated 8/31/04, the entire debt will become delinquent on 10/30/04 or 61 days [1 day delinquent] after the date of the demand if it remains owing.)

The general rule and specific examples of interest accrual for MSP recoveries are as follows:

Interest will accrue from the date the debt is established. MSP debts are routinely established as of the date of the initial recovery demand letter. Interest is owed when the debt is not fully resolved/paid within the time period specified in the recovery demand letter (e.g., 60 days). If payment is received within the time-frame specified in the recovery demand letter, no interest will be due or assessed. If payment is not received when due, interest is assessed on the outstanding principal amount from the date of the initial recovery demand letter for each full 30-day period.

**Reminder regarding the first day of the 30 day interest period -- The date of the recovery demand letter (not the day after) is the first day of the first 30-day period. Examples:**

**MSP Debt Established Prior to 10/01/2004 –Recovery Demand Letter Specified that Payment was due within 60 Days.** - On 08/31/2004, the contractor issues a recovery demand letter establishing an MSP-based debt for $10,000 and stating that interest will be charged if payment in full is not made within 60 days. Payment is not remitted until 11/04/2004 (65 days after the date of the recovery demand letter). Interest has accrued on the $10,000 for three 30-day periods: one for the first 30 days, one for the period of time between days 31-60, and one for the period of time between days 61-65 (because interest is due and payable for the full 30-day period as of the first day of that period).

**MSP Debt Established Prior to 10/01/2004 – Example of Interest Accrual – Recovery Demand Letter Specified that Payment was Due Within 30 Days.**  On 08/31/2004, the contractor issues a recovery demand letter establishing an MSP-based debt for $10,000 and stating that interest will be charged if payment in full is not made within 30 days.  Payment is not remitted until 10/03/2004 (33 days after the date of the recovery demand letter).  Interest has accrued on the $10,000 for two 30-day periods: one for the first 30 days, and one for the period of time between days 31-60 (because interest is due and payable for the full 30-day period as of the first day of that period).

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000029 of 000035

Filed    17-CI-00639    06/09/2017    Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

**MSP Debt Established On or After 10/01/2004 – Recovery Demand Letter Specified that Payment was due within 60 Days.** On 10/31/2004, the contractor issues a recovery demand letter establishing an MSP-based debt for $10,000 and stating that interest will be charged if payment in full is not made within 60 days. Payment is not remitted until 01/04/2005 (65 days after the date of the recovery demand letter). Since only two full 30-day periods have passed, interest has accrued on the $10,000 for two 30-day periods.

**MSP Debt Established On or After 10/01/2004 – Example of Interest Accrual – Recovery Demand Letter Specified that Payment was Due Within 30 Days.** On 10/01/2004, the contractor issues a recovery demand letter establishing an MSP-based debt for $10,000 and stating that interest will be charged if payment in full is not made within 30 days. Payment is not remitted until 11/03/2004 (33 days after the date of the recovery demand letter). Since only one full 30-day period has passed, interest has accrued on the $10,000 for one 30-day period.

## 70.2.1 – MSP Debt Interest Accrual on Partial Payments
**(Rev. 45, Issued:  12-16-05; Effective/Implementation Dates:  01-17-06)**

For situations where partial payment is received on a debt with outstanding interest -- Payment is normally credited to interest first, principal (HI first, then SMI) second, leaving an outstanding amount of principal due (or in some situations, leaving both principal and interest due if the partial payment is insufficient to satisfy the outstanding interest amount).

- For debts established before 10/01/04, interest for the entire 30-day period in which the partial payment was received is required to be accrued and posted before application of the partial payment. Consequently, further interest/any additional interest on the outstanding principal amount for an MSP debt established before 10/1/04 would be calculated **starting with the first day of the next 30-day period** following receipt of the check.

  Example:  Debt established 8/31/04 for $500 and a partial payment of $200 dollars was received (post marked) 11/1/04.  Contractors shall calculate and post interest specific to 3 30-day periods (63 days from date of demand equals 3 interest periods).  Assuming the interest equaled $5 for each 30-day periods, $15 would be applied to interest and $185 would be applied to principal.  The remaining outstanding principal of $315 would continue to accrue interest.  Interest for an additional **prospective** 30-day period for the $315 would be due on day 91 (the first day of a new 30-day period as interest is due and payable for the full 30-day period as of the first day of each period).

- For debts established on or after 10/1/04 where a partial payment is received midway through the 30-day period, interest on the debt will not have accrued up to the date of payment, but only through the end of the prior 30-day period. Consequently, further interest/additional interest on the outstanding principal

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)
EXH : 000030 of 000035

amount for an MSP debt established on or after 10/1/04 would be calculated on the principal amount outstanding as of the end of the 30-day period in which the partial payment was received and would be calculated **from the first day of the 30-day period in which the partial payment was received.**

Example:  Debt established 10/01/04 for $500 and a partial payment of $200 dollars was received (post marked) 12/1/04.  Contractors shall calculate and post interest specific to 2 full 30-day periods (62 days from date of demand equals 2 full interest periods).  Assuming the interest equaled $5 for each 30-day periods, $10 would be applied to interest and $190 would be applied to principal.  The remaining outstanding principal of $310 would continue to accrue interest.  Interest for an additional **retrospective** 30-day period for the $310 would be due on day 91 (the day after the end of a current 30-day period, as additional interest is due only after each **full** 30-day period for that part of the principal that remains unresolved).

## 70.3 – MSP Debt Interest Assessment
**(Rev. 45, Issued:  12-16-05; Effective/Implementation Dates:  01-17-06)**

Under the regulations for calculating interest, as effective for MSP debts established on or after October 1, 2004, interest is assessed for each full 30-day period when payment is not made in full (both principal and interest) and continues to be assessed for each full 30-day period on any portion of the debt that remains outstanding. This change in the manner in which interest is calculated applies to all MSP debts, both GHP-based debt and non-GHP-based debt, regardless of who is the debtor. Interest on MSP debts established prior to October 1, 2004, will continue to be assessed under the former method (interest is due and payable as of the first day of each 30-day period for that full 30-day period) until recovered in full. (Contractors are reminded that, in those rare instances where they have an "interest only" debt, debt does not accrue interest.)

**NOTE:**  Contractors shall implement the instruction in CR 4012 which provides 60 days for resolution of the debt prior to interest assessment for all MSP debt established on or after the effective date of the CR.  That is, effective with CR 4012, all recovery demand letters for new MSP debt will provide a period of 60 days for repayment before the debt is delinquent.  If the debt becomes delinquent, interest accrues from the date of the original demand.

## 70.3.1 - Additional Rules with Regard to the Assessment and Collection of Interest for MSP-based Debts
**(Rev. 45, Issued:  12-16-05; Effective/Implementation Dates:  01-17-06)**

- Interest must be charged on all MSP debts except: 1) GHP-based debt where the beneficiary is the debtor, and 2) debt where the "current debtor," as that term is defined in section 60.2 of Pub. 100-05, Chapter 7, is a Federal entity.  The requirement concerning debtors that are Federal entities is required by law and is a new requirement for Medicare contractors.  To implement this requirement,

Filed          17-CI-00639      06/09/2017        Amy Feldman, Franklin Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                          06/16/2017 10:53:16 AM
                                                                          89824-3

contractors are to identify all outstanding debts where a Federal entity is the "current debtor." Once identified, contractors must make a downward adjustment for all accrued interest previously reported and associated with these debts. If systems changes are necessary to cease interest accrual for these debts, contactors must manually adjust the accrued interest amounts for these debts on the quarterly M751/MC751 reports until systems changes can be completed.

**NOTE:** The rule applies only when the current debtor is the Federal entity. It does **not** apply in the rare circumstance where the employer is a Federal entity.

- but the current debtor is the insurer or TPA.

- Interest charged is simple interest, not compound interest. The CMS does not charge interest on any outstanding interest. Interest accrues only on unpaid principal amounts.

- When compromising an MSP debt, CMS' primary concern is protection of the Trust Funds. When CMS compromises a debt, the policy is to compromise interest first and principal second; otherwise, compromises would often be of little or no benefit to the Trust Funds. The only exception to this policy would be if a compromise agreement specifically allocates the amount to be repaid in some other manner. The amount compromised is written off closed as bad debt. Two examples of the correct application of payment received from the debtor when CMS has notified the contractor of a compromise agreement include:

  o Assume there is an AR with principal due of $1000, interest due of $200 as of the date of receipt of payment, and CMS has agreed to compromise for $700. When the payment of $700 is received, the end result must be: $200 interest written off closed as bad debt, $300 principal written off closed as bad debt, and the $700 payment applied to principal.

  o Assume there is an AR with principal due of $2000, interest due of $1000 as of the date of receipt of payment, and CMS has agreed to compromise for $2200. When the payment of $2200 is received, the end result must be: $800 interest written off closed as bad debt, $200 of the payment applied to interest, and $2000 of the payment applied to principal.

As long as the agreed upon compromise amount is paid within the time frame specified by the RO, any interest accrued after the date of the compromise agreement is written off closed as bad debt.

**NOTE:** Contractors may not take write-off closed actions for the compromised ("forgiven") portions of a debt until payment for the remaining portion of the debt has been received. Contractors shall maintain the compromise instructions from CMS to support the associated write-off closed action(s) for principal and/or interest.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH - 000032 of 000035

Filed    17-CI-00639    06/09/2017    Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

**NOTE:** Contractors will be notified by CMS when Treasury has compromised a debt and instructed as to how the compromise portion of the debt shall be shown on the financial statements.

If contractors cannot achieve the necessary result without systems changes, they must perform a manual work around until systems changes are made.

- Where the principal amount of the debt is adjusted downward due to a valid documented defense or a waiver of recovery under section 1870 of the Social Security Act, the interest amount must be re-calculated based upon the remaining principal. If a contractor's system does not automatically perform this function when the principal is adjusted, then the contractor must do this manually and enter an appropriate downward adjustment to the associated interest. (Decisions for waiver of recovery under section 1870 of the Act are decisions with regard to the principal amount of the debt. For any amount of principal waived under section 1870, the associated interest ceases to exist and must be adjusted downward accordingly.)

- Where a contractor is informed by CMS that CMS has waived some or all of the interest on a particular debt, the contractor must perform an adjustment for the amount of the waived interest before applying any payment. A waiver of interest is recorded as an adjustment on line 5(a). (Note: Use of line 5(h) is limited to waiver actions under section 1870 or section 1862 of the Social Security Act).

Waiver of interest requests should be rare. If such a request is received, the request must state the basis for the request. When this information is received, the request shall be forwarded to the contractor's RO MSP coordinator along with the applicable case file.

- Contractors are reminded that where a beneficiary establishes that he/she did not receive settlement/judgment/award funds until **after** the issuance of the recovery demand letter, no interest is due until 60 days from his/her receipt of such funds. Receipt of such funds by the beneficiary or his/her representative constitutes receipt by the beneficiary. In such situations the contractor must adjust off any interest showing as owed within the contractor financial tracking systems for the period prior to 60 days from receipt of the funds. Such an adjustment is not a waiver of interest and **shall not** be treated as a waiver of interest and forwarded to the RO.

Contractors are furnished with the applicable interest rates on a regular basis through a separate notification. Contractors shall track and report interest manually, if necessary, in order to comply with the above instructions.

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000033 of 000035

Filed          17-CI-00639       06/09/2017        Amy Feldman, Franklin Circuit Clerk    NOT ORIGINAL DOCUMENT
                                                                                        06/16/2017 10:53:16 AM
                                                                                        89824-3

## Transmittals Issued for this Chapter

| Rev # | Issue Date | Subject | Impl Date | CR# |
|---|---|---|---|---|
| R118MSP | 04/28/2016 | Individuals Not Subject to the Limitation on Medicare Secondary Payment (MSP) | 05/31/2016 | 9576 |
| R113MSP | 08/06/2015 | Instructions for the Shared Systems and Medicare Administrative Contractors (MACs) to follow when a Medicare Residual Payment must be Paid on Workers' Compensation Medicare Set-aside Arrangement (WCMSA) or for Ongoing Responsibility of Medicals (ORM) Non-Group Health Plan (NGHP) Medicare Secondary Payer (MSP) Claims | 01/04/2016 | 9009 |
| R65MSP | 03/20/2009 | New Common Working File (CWF) Medicare Secondary Payer (MSP) Type for Workers Compensation Medicare Set-Aside Arrangements (WCMSAs) to Stop Conditional Payments | 04/06/2009/ 07/06/2009 | 5371 |
| R64MSP | 01/09/2009 | New Common Working File (CWF) Medicare Secondary Payer (MSP) Type for Workers Compensation Medicare Set-Aside Arrangements (WCMSAs) to Stop Conditional Payments - Rescinded and replaced by Transmittal 65 | 04/06/2009/ 07/06/2009 | 5371 |
| R49MSP | 04/07/2006 | Manualizing Long-Standing Medicare Secondary Payer (MSP) Policy | 05/08/2006 | 4024 |
| R45MSP | 12/16/2005 | Interest on MSP Debts | 01/17/2006 | 4125 |
| R33MSP | 08/12/2005 | Working Aged Exception for Small Employers in Multi-Employer Group Health Plans (GHPs) | 05/20/2005 | 3768 |
| R28MSP | 04/28/2005 | Working Aged Exception for Small Employers in Multi-Employer Group Health Plans (GHPs) | 05/20/2005 | 3768 |

Presiding Judge: HON. THOMAS DAWSON WINGATE (648243)

EXH : 000034 of 000035

Filed      17-CI-00639      06/09/2017      Amy Feldman, Franklin Circuit Clerk  NOT ORIGINAL DOCUMENT
06/16/2017 10:53:16 AM
89824-3

| | | | | |
|---|---|---|---|---|
| R25MSP | 02/25/2005 | Changes Included in the Medicare Modernization Act (MMA) | 04/25/2005 | 3219 |
| R18MSP | 08/27/2004 | Application of Medicare Secondary Payer Provisions for the Working Aged, Disabled Former Spouses and Certain Family Members with Coverage Under the Federal Employees Health Benefits (FEHB) Program | 11/29/2004 | 3120 |
| R02MSP | 10/17/2003 | Individuals Not Subject to the Limitation on Payment | 04/01/2004 | 2252 |
| R01MSP | 10/01/2003 | Initial Issuance of Manual | N/A | N/A |

Back to top of Chapter

Presiding Judge: HON. THOMAS  DAWSON WINGATE (648243)

EXH : 000035 of 000035